UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BHAN W. KARAM,

    Plaintiff

v.

MERRICK GARLAND, *et al*,

    Defendants

Civil Action No. 21-0915 (CKK)

**MEMORANDUM OPINION**
(September 30, 2022)

    Plaintiff Bhan W. Karam is a citizen and resident of the United States, who seeks to compel Defendants to render a decision regarding the eligibility of his mother and siblings to be admitted to the United States as refugees. Plaintiff argues that Defendants have unreasonably delayed consideration of his family's eligibility to be admitted to the United States as refugees, and have thereby violated the Administrative Procedure Act, Mandamus Act, and the Due Process Clause of the Fifth Amendment.

    Pending before the Court is Defendants' [21] Motion to Dismiss or, in the alternative, for Summary Judgment. Upon review of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court concludes that it lacks jurisdiction to consider Plaintiff's APA and Mandamus Act claims, and that the Complaint fails to state a claim for relief under the Fifth Amendment. Accordingly, the Court shall **GRANT** Defendants' Motion to Dismiss the Complaint.

---

[1] The Court's consideration has focused on: Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment ("Defs.' Mot."), ECF No. 21; Plaintiff's Opposition to Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment ("Pl.'s Opp'n"), ECF No. 23; Defendants' Reply in Support of Motion to Dismiss or, in the alternative, for Summary Judgment ("Defs.' Reply"), ECF No. 25; and the portions of Plaintiff's Surreply ("Pl.'s Surreply"), ECF No. 26-1, which the Court granted leave to file, *see* ECF No. 31. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

I. **BACKGROUND**

A. **Refugee Admissions to the United States**

The U.S. Refugee Admissions Program ("USRAP") manages the admission of refugees to the United States. *See* Declaration of Joanna Ruppel ("Ruppel Decl.") ¶ 12, ECF No. 21-2.[2] The Secretary of Homeland Security has delegated to U.S. Citizenship and Immigration Services ("USCIS") the authority to determine "eligibility for refugee status" under the INA. *Id.* The International and Refugee Affairs Division ("IRAD"), a component of USCIS's Refugee, Asylum, and International Operations Directorate, is responsible for adjudicating all refugee cases. *Id.*

Pursuant to 8 U.S.C. § 1157(c)(1), "the Attorney General may, in *the Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe*, admit any refugee who is not firmly resettled in any foreign country, is determined to be of special humanitarian concern to the United States, and is admissible . . . as an immigrant." 8 U.S.C. § 1157(c)(1) (emphasis added). The USRAP has established three "processing priorities" to identify individuals of "special humanitarian concern to the United States and who are eligible for refugee resettlement consideration" Ruppel Decl. ¶ 13. One of these categories—"Priority 3" (or "P-3")—includes individuals "from designated nationalities granted access for purposes of reunification with family members already in the United States." *Id.* The assignment of a "processing priority" does not determine the order in which cases will be processed; rather, once a case is established as "eligible for access" under one of the three processing priorities, it will undergo the same adjudicative process conducted by IRAD as all other eligible refugees. *Id.* ¶ 14.

---

[2] *See also* The United States Refugee Admissions Program (USRAP) Consultation and Worldwide Processing Priorities, USCIS, https://www.uscis.gov/humanitarian/refugees-and-asylum/usrap (last visited September 30, 2022) (describing USRAP as an "interagency effort involving a number of governmental and non-governmental partners both overseas and in the United States").

The P-3 category "provides USRAP access" to prospective refugees who have certain immediate family members in the United States. *Id.* ¶ 15. To proceed under P-3, an "anchor relative"—who (a) resides in the United States and (b) entered the United States as a refugee—must submit an Affidavit of Relationship on behalf of his or her overseas relative(s). *See* Defs.' Mot. at 4; Ruppel. Decl. ¶ 17. The Affidavit of Relationship seeks information regarding the "anchor relative" and his family members overseas seeking refugee status. Defs.' Mot. at 4; Ruppel. Decl. ¶ 17.[3] The Affidavit of Relationship is available as State Department Form DS-7656, which provides in its instructions:

> By completing this form you are claiming a relationship with family members overseas in order to assist the U.S. Government in determining whether those family members are qualified to apply for admission to the United States under the U.S. Refugee Admissions Program *(USRAP)*. The [Affidavit of Relationship] itself is not an application on behalf of your family member for admission to the U.S. as a refugee under the USRAP or a petition for any immigration benefit under U.S. law . . .
>
> The D.S. 7656 provides a means for persons in the United States who were admitted as refugees . . . to claim a relationship with certain family members overseas and to assist the U.S. Department of State in determining whether those family members are qualified to apply for access to the USRAP for family reunification purposes.

*See* DS-7656, Affidavit of Relationship at 1, ECF No. 25-3.

Upon submission of the Affidavit of Relationship, the Refugee Access Verification Unit ("RAVU") verifies the relationship between the "anchor relative" in the United States and the

---

[3] "The Affidavit of Relationship is the form used to reunite refugees and asylees with close relatives who are determined to be refugees but are outside the United States. The Affidavit of Relationship records information about family relationships and must be completed in order to begin the application process for relatives who may be eligible to enter the United States as refugees through the U.S. Refugee Admissions Program." USCIS, Refugees, Bringing Your Family to the United States, https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees (last visited September 30, 2022).

individuals overseas seeking refugee status. *See* Ruppel Decl. ¶ 17. If RAVU verifies the relationship, the application is returned to the Refugee Processing Center, which then sends the application to a Resettlement Support Center for "further processing, including scheduling for interview." *Id.*

Adjudication of refugee applications must be conducted by "specially trained officers." Second Declaration of Joanna Ruppel ("2d Ruppel Decl.") ¶ 8, ECF No. 25-1 (citing 8 U.S.C. § 207(f)). And interviews must be conducted "in person" before an "immigration officer." *Id.* ¶ (citing 78 C.F.R. § 207.2(a)). IRAD currently employs approximately 110 Refugee Officers with "primary responsibility for adjudicating refugee applicant requests for resettlement." Ruppel Decl. ¶ 18. Defendants indicate that "[n]ormally, each fiscal quarter, the State Department sends to USCIS proposed refugee processing locations and dates for refugee processing trips and the number of applicants to be interviewed per location." Defs.' Mot. at 4–5; Ruppel Decl. ¶ 19. These trips are called "circuit rides." Defs.' Mot. at 5; Ruppel Decl. ¶ 19. During these "circuit rides," Refugee Officers "review the information that the Resettlement Support Center has collected and the results of security screening processes and conduct in-person interviews with each refugee applicant . . . before deciding whether to approve an applicant for classification as a refugee." Ruppel Decl. ¶ 20.

IRAD and the State Department determine the schedule and number of available interviews during circuit rides based on "several factors, including available staffing, security risks, and travel restrictions, such as those related to COVID-19." Defs.' Mot. at 5; Ruppel Decl. ¶ 21. These planned circuit rides "can be disrupted and even cancelled" due to "war, civil unrest, and other factors of concern to the refugee officers' safety and security." Ruppel Decl. ¶ 21. As pertinent to the pending action, IRAD suspended *all* overseas refugee circuit rides in March 2020, including

4

those in Ethiopia due to the COVID-19 pandemic. *Id.* ¶ 22. In the final quarter of the government's 2021 fiscal year, IRAD resumed circuit rides "on a small scale." *Id.* The location of circuit rides is dependent on "USRAP processing priorities," as well as "movement restrictions issued by local governments, post-by-post restrictions issued by the Department of State, and the ability to safely conduct in-person interviews while protecting the health of officers, Resettlement Support Center staff, refugee applicants, and interpreters." *Id.* ¶ 23.

IRAD did not conduct any circuit rides in Ethiopia in FY2020 or FY2021. *Id.* ¶ 28. It also did not schedule any circuit rides to Ethiopia during the first two quarters of FY2022 due to "continuing armed conflict and civil unrest in the country." *Id.* Notably, as of November 5, 2021, the Department of State ordered the departure of non-emergency U.S. government employees and their family members from Ethiopia. *Id.*

After conducting an interview and completing security background checks, USCIS officers render a decision on a refugee application. If USCIS approves a refugee application, IRAD notifies the State Department and the prospective refugee applicant is required to undergo medical screening. Ruppel Decl. ¶ 24. Once the eligible person passes required medical examinations, the Resettlement Support Center refers the case to an international organization called the International Organization for Migration to coordinate transportation to the United States. *Id.*

### B. Factual Background

Plaintiff Bhan W. Karam ("Plaintiff") was born in South Sudan and admitted as a refugee to the United States in 2014. Compl. ¶¶ 1, 25. He became a naturalized United States citizen in 2019. *Id.* ¶¶ 1, 15. In 2017, Plaintiff's mother, Nyalieth Chuol Dech ("Ms. Dech"), her three

younger children, and her stepdaughter fled South Sudan, eventually landing at the Jewi refugee camp near Gambella, Ethiopia. *Id.* ¶ 2.

In December 2017, Plaintiff filed an Affidavit of Relationship with USRAP, initiating the process of having Ms. Dech and her other children come to the United States under the "P-3" refugee resettlement program. *Id.* ¶¶ 3, 28; Ruppel Decl. ¶ 26. Plaintiff and Ms. Dech completed DNA testing in 2019, which confirmed that they are mother and son. Compl. ¶ 30.

Mr. Karam states that, since he submitted his Affidavit of Relationship in 2017, Ms. Dech's health has been declining and she has been unable to obtain adequate medical care at the refugee camp. *Id.* ¶¶ 6, 36, 43, 44. Ms. Dech has been "experiencing problems with her legs" since 2015, and suffers from "weakness and temporary paralysis that affects her ability to walk and do other daily activities." *Id.* ¶ 44. In addition, a civil war in Ethiopia has made "an already strained situation in the refugee camp even worse"; the Complaint indicates that due to "security risks," people "are afraid to leave the camp," Mr. Dech and her children are "lacking sufficient food." *Id.* ¶¶ 7, 46. And the "children have not been able to attend school" due to the COVID-19 pandemic. *Id.* ¶¶ 7, 45.

At the time Mr. Karam filed his Complaint on April 5, 2021, his family's refugee eligibility was still under review by RAVU. Compl. ¶ 10. However, Defendants indicate "that process has now been completed and Plaintiff's mother is awaiting an interview on her petition for admissions to the United States as a P-3 refugee." Defs.' Mot. at 6; Ruppel Decl. ¶ 27 ("On June 16, 2021, the RAVU Unit at IRAD verified the qualifying relationship and his mother[.]").

In a status report dated August 31, 2022, Defendants indicate that a "pre-screening" interview of Ms. Dech has been scheduled for September 1, 2022, which is a "necessary first step to the actual refugee interview." Defs.' Status Report, ECF No. 29. Defendants further represent

that, "[t]he actual refugee interview will be scheduled on the next circuit ride to Addis Ababa[,] Ethiopia," and that "the agency estimates that, assuming no extenuating circumstances . . . the interview would be scheduled in the first quarter of FY2023 on or before December 31, 2022." *Id.*

Plaintiff then filed a status report on September 13, 2022, reporting that Ms. Dech reported for an interview on September 9, 2022 and was told that "her children were not included in the case." Pl.'s Status Report, ECF No. 30.  Based on this report, the Court directed Defendants to file a response regarding the circumstances of this interview.  Minute Order (Sept. 17, 2022).  Defendants submitted a status report on September 23, 2022, indicating: "Notwithstanding what Ms. Dech was told on September 9, 2022, Ms. Dech will be allowed to include her children in her application for refugee status. As previously represented to the Court, their interview will be scheduled before December 31, 2022." Defs.' Status Report, ECF No. 33.

### C. Procedural Background

Mr. Karam filed his Complaint in this action on April 5, 2021, asserting claims under the APA (Count I), Mandamus Act (Count II), and the Due Process Clause of the Fifth Amendment (Count IV). Compl. ¶¶ 48–62, 67–70. Plaintiff also asserts a standalone claim for "injunctive relief" (Count III). *Id.* ¶¶ 63–66. Plaintiff claims that Defendants' delay in considering his family's P-3 eligibility is "unreasonable" under the APA, 5 U.S.C. § 555(b). *See id.* ¶¶ 48–54. He also seeks relief under the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants to "timely process and adjudicate the refugee admissions process." *See id.* ¶¶ 55–62. And he claims that he has a "fundamental right to the 'integrity of [his] family unit'" under the Fifth Amendment's Due Process Clause, of which the alleged delayed adjudication of their refugee application has deprived him. *See id.* ¶¶ 67–70. Mr. Karam seeks an order compelling Defendants to "complete the refugee admissions process for Ms. Dech and her children without further delay," *Id.* ¶ 71.

7

On November 22, 2021, Defendants filed their pending Motion to Dismiss or, in the alternative, for Summary Judgment, which is ripe for the Court's review.

## II.   LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Federal Rule of Civil procedure 12(b)(1). To determine whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F. 3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.,* 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005). Despite the favorable inferences afforded to a plaintiff on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Environmental Prot. Agency,* 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks

omitted) (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001), *aff'd*, 2008 WL 4068606 (D.C. Cir. Mar. 17, 2008)). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp.*, 758 F.3d at 315.

### III.   DISCUSSION

For the following reasons, the Court concludes that it lacks jurisdiction to consider Plaintiff's APA and Mandamus Claims, and that Plaintiff fails to state a claim for relief under the Due Process Clause of the Fifth Amendment. Accordingly, the Court shall **GRANT** Defendants' Motion to Dismiss.

A. **The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's APA (Count I) and Mandamus Act (Count II) Claims.**

Plaintiff asserts that this Court has subject-matter jurisdiction over his claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*; the federal question statute, 28 U.S.C. § 1331; the Mandamus Act, 28 U.S.C. § 1361; the Administrative Procedure Act, 5 U.S.C. §§ 555(b); and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Compl. ¶ 13. Neither the Declaratory Judgment Act nor the federal question statute supplies an independent source of federal jurisdiction. *Schilling v. Rogers*, 363 U.S. 666, 678 (1960) (internal citation omitted); *C & E Servs., Inc. of Washington v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002). "To consider a claim under the Declaratory Judgment Act, a federal court must have jurisdiction under another federal statute." *Beshir v. Holder*, 10 F. Supp. 3d 165, 171 (D.D.C. 2014) (citing *Schilling*, 363 U.S. at 678). Similarly, the federal question statute vests federal courts with subject-matter jurisdiction only in cases "arising under" some other source of federal law. *See id.*; 28 U.S.C. § 1331. A federal statute, like the Administrative Procedure Act ("APA"), can provide the basis for federal question jurisdiction, as can a claim arising under the Constitution.

The APA provides that federal courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, the APA does not apply where "agency action is committed to agency discretion by law." § 701(a). "[T]he only agency action that can be compelled under the APA is action legally required . . . Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required* to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004) (emphasis in original). In other words, the APA "does not provide a basis for jurisdiction over a claim that an agency failed to take a discretionary action." *Beshir*, 10 F. Supp. 3d at 171.

10

Plaintiff also cites the Mandamus Act as a source of subject-matter jurisdiction, which provides federal courts with jurisdiction to "compel an officer or employee of the U.S. or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, as with the APA, mandamus is only appropriate if there is a "clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). "[T]he standards for obtaining relief [through mandamus and through the APA] are essentially the same." *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n. 6 (D.C. Cir. 2010) (citing *In re Core Commc'ns Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

In addition, the APA does not apply (and therefore supplies no basis for federal question jurisdiction) if another statute "precludes judicial review." 5 U.S.C. § 701(a). The Immigration and Nationality Act contains the following "jurisdiction-stripping provision": "Notwithstanding any other provision of law," no court shall have jurisdiction to review "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" 8 U.S.C. § 1252(a)(2)(B)(ii). "This jurisdiction-stripping provision dovetails with the jurisdictional limitations of the APA: the APA does not provide a basis for jurisdiction over discretionary agency action, and the INA prohibits jurisdiction over discretionary agency action." *Beshir*, 10 F. Supp. 3d at 171.

Here, Defendants contend that the Court lacks jurisdiction because the "pace" of reviewing whether Plaintiff's family members are eligible for refugee status is "discretionary." Defs.' Mot. at 14–15. Although the Court has not identified any legal authority addressing refugee status specifically, other courts in this and other jurisdictions have addressed the question of "whether the APA or the Mandamus Act provides a basis for jurisdiction—and whether the INA precludes

11

jurisdiction—over claims that USCIS unreasonably delayed the adjudication of an adjustment [of status] application." *Beshir*, 10 F. Supp. 3d at 172 (collecting cases). Courts are divided on this question. *See, e.g.*, *id.* (concluding that court lacks jurisdiction over "pace of processing" claim); *Singh v. Napolitano*, 710 F. Supp. 2d 123 (D.D.C. 2010) (same); *Orlov v. Howard*, 523 F. Supp. 2d 30 (D.D.C. 2007) (same); *Tao Luo v. Keisler*, 521 F. Supp. 2d 72 (D.D.C. 2007) (same). *But see Geneme v. Holder*, 935 F. Supp. 2d 184 (D.D.C. 2013) (finding subject-matter jurisdiction exists); *Liu v. Novak*, 509 F. Supp. 2d 1 (D.D.C. 2007) (same). The D.C. Circuit has not yet opined on the question of whether the "pace of processing" such immigration benefits is "discretionary." *Beshir*, 10 F. Supp. 3d at 172.

Examining these decisions carefully, the Court finds the analysis and conclusion of the first group to be more persuasive. As set forth below, the language of the portion of the INA addressing the admission of refugees, coupled with the "absence of a congressionally mandated timeline" supports the conclusion that the pace of considering Plaintiff's relatives; eligibility to be refugees is "discretionary," which precludes judicial review under the APA or Mandamus Act. *See Beshir*, 10 F. Supp. 3d at 173–77.

First, Defendants point to the language of § 1157(c) to support their argument that consideration of refugee status is a "discretionary function" which strips the Court of jurisdiction under the APA. That section provides:

> **(c) Admission by Attorney General of refugees; criteria; admission status of spouse or child; applicability of other statutory requirements; termination of refugee status of alien, spouse or child**
>
> (1) Subject to the numerical limitations established pursuant to subsections (a) and (b), *the Attorney General may, in the Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe*, admit any refugee who is not firmly resettled in any foreign country, is determined to be of special

> humanitarian concern to the United States, and is admissible (except as otherwise provided under paragraph (3)) as an immigrant under this chapter.

8 U.S.C. § 1157(c)(1) (emphasis added). Defendants argue that because the admission of refugees is made "discretionary" by the explicit language of § 1157(c)(1), an action challenging the pace of adjudicating refugee admissions is barred by § 1252(a)(2)(B)(ii) and therefore the Court lacks jurisdiction under the APA. Defs.' Mot. at 16–17.

Confronting similar statutory language, the court in *Beshir* concluded that it lacked jurisdiction to consider a claim for unreasonable delay under the APA and Mandamus Act by a plaintiff who challenged a two-year delay in adjusting his status. There, the court examined section 1159(b) of the INA, which provides: "[t]he Secretary of Homeland Security or the Attorney General, *in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe*, may adjust . . . the status of any alien granted asylum." *Beshir*, 10 F. Supp. 3d at 173 (emphasis added). The court found that this language made "clear that the statutes grant discretion not only over the decision to adjust an alien's status but also over the promulgation of regulations to create the process by which an alien's status may be adjusted." *Id.*

Plaintiff, however, cites to other decisions in which courts have concluded that because the "pace of adjudication" is not specifically mentioned as part of the "discretion" conferred by § 1157(c)(1), the pace of determining refugee eligibility is "not discretionary." Pl.'s Opp'n at 12; *see, e.g.*, *Geneme*, 935 F. Supp. 2d at 1; *Liu*, 509 F. Supp. 2d at 7–9 (finding that the INA does not specifically address the pace of application processing; and so pace is not discretionary). He cites these cases for the proposition that there "exists a non-discretionary duty to act on and process the application." Pl.'s Opp'n at 12. But this argument appears to be premised on Plaintiff's belief that consideration of his family's refugee status is "on hold." Pl.'s Opp'n at 13. The present record

13

belies this claim.  Defendants have reported that a circuit ride to Ethiopia—and with it, Plaintiff's interview—will occur by the end of this year.

The Court is more persuaded by the reasoning of *Beshir*, the case relied upon by Defendants.  There, the court reasoned that "[g]ranting the Attorney General and the Secretary the discretion to promulgate regulations governing the process of adjudication necessarily includes a grant of discretion over the pace of adjudication." *Beshir*, 10 F. Supp. 3d at 174.  "Otherwise, the grant of discretion would be illusory, given that courts could drastically alter the regulations prescribed by dictating what pace of adjudication the regulations must permit."  *Id.* (quoting *Labaneya v. USCIS*, 965 F. Supp. 2d 823, 829 (E.D. Mich. 2013)); *see also Namarra v. Mayorkas*, 924 F. Supp. 2d 1058, 1064 (D. Minn. 2013) ("[C]ommit[ting] the adjustment decision itself, as well as the authority to promulgate regulations governing the adjudication process, to the Secretary's discretion, but exclud[ing] from the Secretary's discretion the time required to arrive at the adjustment decision, merely puts form over substance.").  This reasoning applies with equal force to the provision at issue here—which confers upon the Attorney General "in *Attorney General's discretion and pursuant to such regulations as the Attorney General may prescribe*" to "admit any refugee."  § 1157(c)(1).  The "express grant" of discretionary authority to admit refugees and promulgate appropriate regulations would be "meaningless" if the Court "could impose . . . some judicially-created time requirement." *Namarra*, 924 F. Supp. 2d at 1064.  In other words, the "statutory grant of discretion over *how*" to admit refugees "necessarily carries with it the discretion to determine when those adjustment decisions will be made." *Id.* (citing *Singh*, 710 F. Supp. 2d at 129–30).

The Court in *Beshir* also noted that the lack of a "congressionally-imposed deadline or timeframe to complete the adjudication of adjustment applications supports the conclusion that the

pace of adjudication is discretionary and thus not reviewable." *Beshir*, 10 F. Supp. 3d at 176.  The same is true here;  § 1157(c) lacks any timeframe within which applications seeking refugee status must be adjudicated.  *See* Defs' Mot. at 16.  Plaintiff concedes that there is "no explicit statutory timeline."  Pl.'s Opp'n at 16.

Based on the Court's conclusion that the "pace of adjudication" is discretionary, neither the APA nor the Mandamus Act provides a basis for this Court to assert jurisdiction over Plaintiff's unreasonable delay claim.  *See, e.g., S. Utah Wilderness Alliance*, 542 U.S. at 63–64 (holding that a court cannot, under the APA, compel an agency to act unless there is a nondiscretionary, specific act—i.e., a discrete action that the agency is required to take); *Pittston Coal Group*, 488 U.S. at 121 (holding that mandamus is only appropriate where defendant owes petitioner "a clear nondiscretionary duty").  Moreover, other courts have concluded that the pace of adjudication is a "decision or action" falling within the INA's jurisdiction-stripping provision, § 1252(a)(2)(B) (precluding judicial review of any "decision or action" for which the authority "under this subchapter" is "in the discretion" of the Attorney General or Secretary).  *See Beshir*, 10 F. Supp. 3d at 174; *Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006).  In sum, the INA's jurisdiction-stripping provision applies to the pace of adjudication, precluding Plaintiff's unreasonable delay claim from judicial review.

Because the Court concludes that the pace of considering whether Plaintiff's family members are eligible to be refugees falls within the agency's discretion and therefore is precluded from judicial review by the APA, the Court concludes that it lacks jurisdiction over Plaintiff's Mandamus and APA claims.  Accordingly, the Court does not reach Defendants' additional jurisdictional challenges, or its arguments that Plaintiff's unreasonable delay claims should be dismissed under Rule 12(b)(6).

### B. Plaintiff Fails to State a Claim for Violation of Due Process Under the Fifth Amendment (Count IV).

Plaintiff separately asserts a claim under the Fifth Amendment's Due Process Clause. He claims that he "has a fundamental right" to the "integrity of [his] family unit," which has been violated by Defendants' "unreasonable delay in adjudicating" his family members' refugee applications. Compl. ¶¶ 68–69. The Court shall also dismiss this claim because Plaintiff has failed to state a plausible claim for relief under the Due Process Clause.

To state a due process claim, a plaintiff must plausibly allege that "there exists a liberty or property interest of which plaintiff has been deprived," and that "the procedures the government provided were constitutionally inadequate." *Ghadami v. Dep't of Homeland Security*, Civil Action No. 19-397(ABJ), 2020 WL 1308376, at *10 (D.D.C. Mar. 19, 2020) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 47 (D.D.C. 2018)).

Defendants argue that Plaintiff has failed to identify the requisite liberty interest, noting that "[n]o court has ever found that a United States citizen has a liberty interest in living with their parent in the United States." Defs.' Mot. at 27. Plaintiff does not respond to this argument in his Opposition—notably, the Opposition contains no mention of "due process" or the Constitution. By failing to address this argument, he concedes that he failed to identify a cognizable liberty interest to support his "due process" claim. *See, e.g.*, *Ali v. D.C. Court Services*, 538 F. Supp. 2d 157 (D.D.C. 2008) ("If a plaintiff . . . files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

In any event, the Court has not identified any legal authority supporting the proposition that the due process clause "protects all familial relationships, including the relationship of an adult

16

child with [his] parent." *Ghadami*, 2020 WL 1308376, at *10; *see also Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1353 (S.D. Fla. 2006) ("[T]here is no statutory or constitutional right to familial association with a person trying to immigrate to the United States."). Rather, the "D.C. Circuit does not recognize a relationship protected under the due process clause where the child is an independent adult." *Id.* (citing *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001)). Based on Plaintiff's failure to identify a protected liberty interest in support of his claim, the Court shall dismiss his constitutional claim.

### C. Plaintiff's Standalone Claim for "Injunctive Relief" (Count III) Shall Be Dismissed.

Finally, Count III of Plaintiff's Complaint contains as a standalone claim: "Request for Injunctive Relief," asserting that Defendants have a "clear, ministerial, and nondiscretionary duty to make a determination about whether Ms. Dech and her children may be admitted as refugees." Compl. ¶ 64 (citing 8 U.S.C. § 1157(c)). "Injunctive relief . . . is not a freestanding cause of action, but rather—as its moniker makes clear—a form of relief to redress the other claims asserted by Plaintiff." *Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015); *see also Guttenberg v. Emery*, 41 F. Supp. 3d 61, 69 (D.D.C. 2014) ("Count II of plaintiffs' amended complaint is not a separate cause of action or claim; rather, it is a request that the Court grant a particular form of relief (an injunction)[.]"). Accordingly, the Court shall also dismiss Count III. *See Base One*, 78 F. Supp. 3d at 199 (dismissing standalone claim for "injunctive relief").

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendants' [21] Motion to Dismiss or, in the alternative, for Summary Judgment. This case shall be dismissed. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

**Date:** September 30, 2022